IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| US VIKING LLC, | ) | |
| Roebuck Industrial Park, Building 1 | ) | |
| St. Croix, United States Virgin Islands 00850 | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Misc. No. _____ |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | | |

## CONSOLIDATED PETITION AND MEMORANDUM OF LAW TO QUASH INTERNAL REVENUE SERVICE SUMMONS

COMES NOW Petitioner US Viking LLC, by and through counsel, and petitions to quash a Summons served upon Lee Perryman by the United States Internal Revenue Service. In support thereof, Petitioner avers as follows:

### JURISDICTION AND VENUE

1.     This action arises under 26 U.S.C. §§ 7602 and 7609 and jurisdiction is conferred upon this Court under 26 U.S.C. § 7609(h) and 28 U.S.C. § 1331.

2.     Petitioner received notice of the Summons at issue within twenty days of the filing of this Petition, and on this date mailed by registered or certified mail a copy of the Petition to the person summoned and to the appropriate Internal Revenue Service officer as directed in the Summons. Therefore, the jurisdictional requirements of 26 U.S.C. § 7609(b) have been satisfied.

3.     The party summoned resides, or can be found, in the District of Columbia and, therefore, jurisdiction and venue are proper in this District.

## PARTIES

4.      Petitioner is an entity conducting business at Roebuck Industrial Park, Building 1, St. Croix, United States Virgin Islands 00850.  Petitioner was a noticed person, and therefore, has standing to file the instant Petition.  26 U.S.C. § 7609(b)(2).

5.      The Respondent in this action is the United States of America, as acting through the Internal Revenue Service.

## FACTS

6.      On July 25, 2007, the Respondent issued an IRS Summons ("Summons") to Lee Perryman, Director of Broadcast Technology, Associated Press, 1825 K Street NW, Suite 800, Washington, DC 20006.  The Summons is attached to this Petition as Exhibit A.

7.      The Respondent was required to provide Petitioner notice of the Summons pursuant to 26 U.S.C § 7609(a)(1), which notice was left on or about August 4, 2007.

8.      Petitioner is entitled to notice of the Summons and thus has the right to begin this proceeding to quash the Summons.  26 U.S.C. § 7609(b)(2)(A).

## BASES TO QUASH THE SUMMONS

9.      The Internal Revenue Code authorizes the IRS to issue summonses to third parties to testify and produce records for purposes of ascertaining the correctness of a tax return or determining the tax liability of any person. *See* 26 U.S.C. §§ 7602, 7609.  District courts have jurisdiction to review a petition to quash a summons, as well as to order its enforcement. 26 U.S.C. §§ 7604(a), 7609(h)(1).

10.      A taxpayer may challenge a summons on any appropriate grounds, including failure to satisfy the requirements set forth in *United States v. Powell,* 379 U.S. 48 (1964), abuse of the court's process, or any other appropriate grounds, such as substantial countervailing

policies, excessive burden or overbreadth. *Robert v. United States*, 364 F.3d 988, 996 (8th Cir. 2004); *United States v. Cox,* 73 F. Supp. 2d 751 (S.D. Tex. 1999).  The Government's burden to establish the prima facie case is not heavy. *United States v. Cox,* 73 F. Supp. 2d 751 (S.D. Tex. 1999).  However, this burden cannot be ignored.  It must be satisfied by a showing that the desired documents "might throw light" upon the issue under "inquiry," *i.e.*, whether Petitioner in this case, had a filing requirement for the taxable year 2002.  *See United States v. Judicial Watch, Inc.,* 371 F.3d 824 (D.C. Cir. 2004); *United States v. Cox,* 73 F. Supp. 2d 751 (S.D. Tex. 1999).  The Respondent is not "permitted to conduct a rambling 'fishing expedition'." *United States v. Richards,* 631 F.2d 341, 345 (4th Cir. 1980).

The Supreme Court has made it clear that before an Internal Revenue summons may be enforced, the Respondent must establish the following:

1)      the investigation is conducted pursuant to a legitimate purpose,

2)      the inquiry must be relevant to the purpose,

3)      the information sought is not already within the Respondent's possession, and

4)      the administrative steps required by the Internal Revenue Code have been followed.

*United States v. Powell*, 379 U.S. 48 (1964).

11.    As explained below, under these standards, Respondent's Summons at issue in this case, is not enforceable.

**a.      *The inquiry is not relevant to a legitimate purpose***

On or about April 25, 2005, Respondent sent Petitioner a letter indicating that Petitioner had been "selected for an **inquiry** to determine your possible **filing requirements** with the United States" related to the taxable year **2002**.  (Copy of letter is

attached hereto as Exhibit B, emphases added.)  The Petitioner timely filed its 2002 tax return [Form 1065] with the United States Virgin Islands Bureau of Internal Revenue.

Consistent with the April 25, 2005 letter, the Summons also indicates that it is being issued for records relevant to the Petitioner's **2002 tax year**.  However, the Summons asks for documents that are in no way related to that issue.  In several places, for example, the Summons asks for "all" records without specifying a time period.  Other requests contained within the Summons, including requests for documents and source codes, ask for records from the "earliest data available" to the present.  Still other requests ask for documents involving other taxpayers (William Neville III and Neville and Company) and not just the records relating to the Petitioner.  Examples of these overbroad requests contained in the Summons include the following: (the numbers correlate to the number contained on the Attachment to the Summons):

1. Names, phone numbers and mailing addresses of all Associated Press (AP) employees who were involved in the negotiation, analysis, or write-up of the contract between Associated Press and **Neville and Company** dated August 27, **1996.**

2. Signed copies of all contracts and agreements, including amendments and all schedules and attachments, between Associated Press ("AP") and **William Neville, Neville & Company**, or US Viking LLC ("US Viking"), in addition to the contracts mentioned in item #1.

3. All internal and external letters, memos, emails, or other correspondences related to the negotiation and execution of **all contracts** between AP and **William Neville, Neville & Company**, or US Viking.

4.      Names, phone numbers, and mailing addresses of all AP employees who have **ever worked** with the ENPS program, either in the programming, development, planning, or administration of the ENPS program.

5.      Names, phone numbers, and mailing addresses of all AP employees who have had direct contact with **William Neville** or employees of US Viking or **Neville & Company**.

6.      Article 10.2, page 14 of the "Software Development Services, Support and Marketing Agreement by and Between The Associated Press and US Viking, LLC", indicates that US Viking was to provide a list of their employees or personnel who are to work on ENPS and show their employment status.   There were also to be updates to this list as employment status or personnel changed.  Provide the original of such list delivered by Neville & Company to AP **and all subsequent updates**.

7.      Copies of **all source and object codes,** include previous versions, of the ENPS program.  Use CDs as the recording media and provide tarballs (or other common archive format) of major deliverables of ENPS source code from **Neville & Company** to AP, as follows:

Provide a tarball for the pilot version of ENPS, one for the trial version of ENPS, one for the sign off version of ENPS and a tarball of the most significant (judged by the versioning scheme used for ENPS) **release for each subsequent year until the present.**

8.  Provide a list of **all deliveries** of ENPS software including updates that you received from **Neville & Company** or US Viking, sorted by date. Include in the list:

    a.  Date of delivery

    b.  One line description of what was delivery

    c.  Version #

    d.  Reason (regular update, emergency patch, security patch)

9.  **All operational and management reports** prepared by AP related to the ENPS program.

10. **All operational and management reports** related to the ENPS program received from **William Neville**, US Viking or **Neville & Company.**

11. Provide a report, in spreadsheet format, with the entries of the **Incident Database** starting from the **earliest data available until the present,** and sorted by date. Include in the report:

    a.  Incident Number

    b.  Submission date

    c.  Resolution date

    d.  Severity code

    e.  Impact

    f.  Subject title

    g.  Name of requestor

    h.  Name of person the incident was assigned to

  i.  Name of person who provided the resolution (if different from above)

  j.  Status designation

12. Provide a report, in spreadsheet format, with the entries of the **Bugs Database** starting **from the earliest data available until the present**, and sorted by date. Include in the report:

  a.  Bug Number

  b.  Submission date

  c.  Resolution date

  d.  Severity code

  e.  Impact

  f.  Subject title

  g.  Name of requestor

  h.  Name of person the incident was assigned to

  i.  Name of person who provided the resolution (if different from above)

  j.  Status designation

13. Provide a report, in spreadsheet format, with the entries of the **Enhancements Database** starting **from the earliest data available until the present**, and sorted by date. Include in the report:

  a.  Enhancement Number

  b.  Submission date

  c.  Resolution date

      d.      Impact

      e.      Subject title

      f.      Name of requestor

      g.      Name of person the incident was assigned to

      h.      Name of person who provided the resolution (if different from above)

      i.      Status designation

14.      Name, phone numbers, and mailing addresses of **all persons** involved in the creation of the ENPS Product Release Notices, and source documents used in preparing the Notices.

Respondent must establish that the documents requested above, which date from the beginning of AP's relationship with Petitioner, and in some cases other companies, "until the present" may be relevant to determine whether Petitioner had a **filing requirement with the Respondent for 2002**. The Petitioner did, in fact, timely file an income tax return (Form 1965) for the year 2002 with the United States Virgin Islands Bureau of Internal Revenue.

The Summons is also overbroad in additional respects. As stated above, Respondent has initiated an inquiry to determine whether Petitioner had a tax return filing requirement for 2002. However, the Summons impermissibly requests information and documents regarding "all employees", "all contracts", "all documents", "all schedules", etc. Examples of these overbroad requests include, for example, the following (the paragraphs are numbered to coincide with the Attachment to the Summons):

1.  Names, phone numbers and mailing addresses of **all Associated Press (AP) employees who were involved in the negotiation**, analysis, or write-up of the contract between Associated Press and Neville and Company dated August 27, 1996**.**

2.  Signed copies of **all contracts and agreements**, including amendments and all schedules and attachments, between Associated Press ("AP") and William Neville, Neville & Company, or US Viking LLC ("US Viking"), in addition to the contracts mentioned in item #1.

3.  **All internal and external letters, memos, emails, or other correspondences** related to the negotiation and execution of **all contracts** between AP and William Neville, Neville & Company, or US Viking.

4.  Names, phone numbers, and mailing addresses of **all AP employees who have ever worked with the ENPS program**, either in the programming, development, planning, or administration of the ENPS program.

5.  Names, phone numbers, and mailing addresses of **all AP employees who have had direct contact with William Neville** or employees of US Viking or **Neville & Company.**

6.  Article 10.2, page 14 of the "Software Development Services, Support and Marketing Agreement by and Between The Associated Press and US Viking, LLC", indicates that US Viking was to provide a list of their employees or personnel who are to work on ENPS and show their employment status. There were also to be updates to this list as

employment status or personnel changed.  Provide the original of such list delivered by Neville & Company to AP and **all subsequent updates**.

7.    Copies of **all source and object codes**, include previous versions, of the ENPS program.  Use CDs as the recording media and provide tarballs (or other common archive format) of major deliverables of ENPS source code from Neville & Company to AP, as follows:

Provide a tarball for the pilot version of ENPS, one for the trial version of ENPS, one for the sign off version of ENPS and a tarball of the most significant (judged by the versioning scheme used for ENPS) release for each subsequent year until the present.

8.    Provide a list of **all deliveries** of ENPS software including updates that you received from Neville & Company or US Viking, sorted by date. Include in the list:

a.    Date of delivery

b.    One line description of what was delivery

c.    Version #

d.    Reason (regular update, emergency patch, security patch)

9.    **All operational and management reports** prepared by AP related to the ENPS program.

10.   **All operational and management reports** related to the ENPS program received from William Neville, US Viking or Neville & Company.

14.     Name, phone numbers, and mailing addresses of **all persons** involved in the creation of the ENPS Product Release Notices, and source documents used in preparing the Notices.

The Petitioner timely filed an income tax return (Form 1065) for the year 2002 with the United States Virgin Islands Bureau of Internal Revenue.  The Respondent must prove that the records sought (e.g., all Computer Source Codes from the earliest data available until present; names of all employees that had direct contact with William Neville, etc.) can be relevant to establish that Petitioner also had a filing responsibility with the Respondent for 2002.

**b.     *Respondent failed to comply with the administrative steps required by the Code***

*1.     Respondent has failed to properly begin an administrative proceeding*

The Respondent has initiated an "inquiry" of Petitioner.  To date, the Respondent has not begun an examination of Petitioner. Additionally, to the extent required, Respondent has not complied with any of the procedural requirements set forth in 26 U.S.C. §§ 6221, *et seq*.  The Respondent has failed to take the required administrative steps of properly initiating an examination by sending any required notice to the Petitioner or its owners.

*2.     Respondent failed to comply with Code requirements relating to Computer Software Source Code under 26 U.S.C. § 7612*

Respondent has requested that the summoned party provide "copies of all source and object codes, including previous versions, of the ENPS program."  26 U.S.C. § 7612(d)(2) defines "Computer Software Source Code."  The Source Codes, programmers notes, design documents, memoranda, customer communications, etc. requested by Respondent's Summons, comes within this

definition.  26 U.S.C. § 7612(2) is titled "Circumstances Under Which Computer Software Source Code May Be Provided."  This subsection provides that Respondent must establish:

1.    Respondent is unable to otherwise reasonably ascertain the correctness of any item on a return from

    a.    Taxpayer's books, records, etc., or

    b.    Computer software executable code.

2.    Respondent identifies with reasonable specificity the portion, item or component of such source code needed, and

3.    Respondent determines that the need for such portion or item outweighs the risks of unauthorized disclosure.

The Code continues by providing that Respondent shall be treated as meeting the above requirements if:

1.    Respondent determines that it is not feasible to determine the correctness without the computer software executable code,

2.    Respondent formally requests that the taxpayer provide such code, and

3.    Such code and data is not provided within 180 days of such request.

The Summons should not be enforced because:

- Respondent has not identified with any reasonable specificity, what portion of the Computer Source Code is needed.  Respondent is requesting **all** of the computer source code.

- Respondent has not established that it is unable to otherwise ascertain the correctness of any item on Petitioner's return by referring to Petitioner's books, records, or the computer software executable code.

- Respondent has not established that its need for this source code outweighs the risks of unauthorized disclosures.

- Respondent has not established that production of all of Associated Press' Computer Source Code for all of the versions of its ENPS program (from the first version on or about 1996 through the present) would not be inconsistent with the countervailing policy of protecting the owner's and developer's rights relating to a commercially valuable trade secrets.

  o Should the trade secrets of the Associated Press, which are embodied in the Computer Source Code, become known to a competitor, potential competitor, or anyone who creates computer software, the Associated Press could suffer significant economic harm.  Further, Petitioner, as a developer of the Computer Software Code that Respondent is requesting, could also suffer economic harm, if the ENPS program became widely known and thus presumably less valuable.

  o Where, as in the instant Summons issued by Respondent, it is requesting **all** Computer Source Code for **all years**, up to

the present date (even though the Respondent is only inquiring into Petitioner's filing responsibility for 2002), the countervailing policies protecting the rights of the owners and developers of such valuable software should be protected.

- Respondent has not provided any facts indicating that it is not feasible to determine the correctness of Petitioner's tax return without the Computer Software Source Code.

- Respondent has not previously formally requested from the Petitioner all such source code. This is required by 26 U.S.C. section 7612(b)(3)(B). Further, Respondent has not provided the required 180 day period for any such response.

- Respondent's own Internal Revenue Manual sets forth the conditions needed to summons source code. None of these procedural requirements have been met in this case. Internal Revenue Manual 25.5.6.10.1 (copy attached as Exhibit C).

Therefore, Respondent has not properly conformed its actions to the Code's administrative requirements.

> 3.     *Respondent has not established that it has complied with the Tax Implementation Agreement Between the United States of America and the Virgin Islands*

The United States and the Virgin Islands entered into a Tax Implementation Agreement in 1987 ("Agreement," a copy is attached as Exhibit D). This Agreement is the implementing agreement described in section 1277 of the Tax Reform Act of 1986. Pub. L. No. 99-514.

(Agreement, Article 1). This Agreement was intended to apply to all taxes under the Internal Revenue Code. (Article 2). The Agreement was intended to cover exchanges of information for purposes of administering the tax laws of each government. (Article 1). Article 4.1 provides that "procedures for exchange of information are set forth in Appendix A." Appendix A provides that the IRS representative, who has authority to receive return information from the Bureau of Internal Revenue of the Virgin Islands, must be designated "in writing" to the head of the Bureau. Respondent has not established that the requesting revenue agent (Derek Turpin), or any or all cooperating employees or independent contractors of Respondent have been so designated by the appropriate official of the Respondent in a timely writing to the head of the Virgin Islands Bureau of Internal Revenue to receive this information.

While *Powell* only speaks of the need for compliance with the procedures of the Internal Revenue Code, (*see Mollison v. United States,* 483 F.3d 119 (2d Cir. 2007)), the 1987 Tax Implementation Agreement was the implementing agreement which was described in the Tax Reform Act of 1986. Therefore, its terms also need to be followed by the Respondent.

> 4. *The Summons impermissibly requests documents which are not within the possession, custody or care of the summoned party*

26 U.S.C. § 7602 allows Respondent to request books, records, papers, records or other data in the "possession, custody or care" of the person summoned. It has been held that Respondent has the power to request that certain types of documents be created, such as a handwriting exemplar. *United States v. Euge,* 444 U.S. 707 (1980). However, the Summons in this matter requests the creation of documents that are not ordinarily maintained by the summoned party. The Summons requests the production of:

> 1. Tarballs (or other common archive format),

2.      A list of all deliveries of ENPS software including updates that you received from Neville & Company or US Viking, sorted by date.

3.      A report, in spreadsheet format, with the entries of the Incident Database starting from the earliest data available until the present, and sorted by date.

4.      A report, in spreadsheet format, with the entries of the Bugs Database starting from the earliest data available until the present, and sorted by date.

5.      A report, in spreadsheet format, with the entries of the Enhancements Database starting from the earliest data available until the present, and sorted by date.

Respondent must establish that these documents and data are maintained in the possession, custody or control of the summoned party before these requests may be enforced.

5.    *Respondent failed to properly notify all of the persons identified in the Summons*

26 U.S.C. § 7609(a)(1) requires that Respondent properly notify all persons, identified in the Summons (other than the person summoned). 26 U.S.C. § 7609(a)(2) states that such notice shall be sufficient if it "is served in the manner provided in section 7603 (relating to service of summons) upon the person entitled to notice, or is mailed by certified or registered mail to the last known address of such person, or, in the absence of a last known address, is left with the person summoned."

The Summons at issue in this proceeding requests records relating to US Viking LLC, William Neville and Neville & Company (referred to in the Attachment to the Summons as "Neville and Company"; "Neville and Co."; "Neville & Co."; and "Neville & Company"). (*See*

Summons, Exhibit A, paragraphs 2, 3, 5, 6, 7, 8 and 10). Therefore, US Viking LLC, William Neville and Neville & Company each should have received notice, properly served, of this Summons. In fact, Respondent only served US Viking LLC.

Respondent never sent any notice of the Summons personally to William Neville III or Neville & Company, even though the Summons clearly identified them and requested information relating to them.

Respondent failed to comply with the administrative requirements clearly set forth in 26 U.S.C. § 7609(a) by failing to properly notify all persons identified in the Summons.

**REQUEST FOR RELIEF**

WHEREFORE, Petitioner prays that this Court enter judgment in its favor and quash the Internal Revenue Service Summons served upon Lee Perryman, or grant Petitioner any other relief that this Court deems just and proper.

*Of Counsel*                                        Respectfully submitted,

     /s/ Lewis S. Wiener

Sheldon M. Kay, Esq.                         Lewis S. Wiener, Esq. (Bar No. 414479)
Sutherland Asbill & Brennan LLP        Sutherland Asbill & Brennan LLP
999 Peachtree Street, NE                   1275 Pennsylvania Ave. NW
Atlanta, GA 30309                              Washington, DC 20004
sheldon.kay@sablaw.com                   lewis.wiener@sablaw.com
404.853.8965 telephone                     202.383.0100 telephone
404.853.8806 facsimile                      202.637.3593 facsimile

                                               *Attorney for US Viking LLC*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

US VIKING LLC,                    )
                                  )
            Petitioner,           )
                                  )
      v.                          )          Civil Action No. _____
                                  )
UNITED STATES OF AMERICA,         )
                                  )
            Respondent.           )

## CERTIFICATE OF SERVICE

This is to certify that the foregoing was served on the following parties by certified mail

in accordance with Rule 4(i) of the Federal Rules of Civil Procedure and 26 U.S.C. § 7609(b):


Alberto R. Gonzales                    Office of Jeffrey A. Taylor, United
Attorney General                       States Attorney for the District of
U.S. Department of Justice             Columbia
950 Pennsylvania Avenue, NW            ATTN: CIVIL PROCESS CLERK
Washington, DC 20530-0001              Judiciary Center Building
                                       555 Fourth Street, NW
                                       Washington, DC 20530


Lee Perryman                           Derek Turpin (Badge #95-02192)
Director of Broadcast Technology       Internal Revenue Service
Associated Press                       9350 Flair Drive
1825 K Street NW, Suite 800            El Monte, CA 91731
Washington, DC 20006


This 17th day of August 2007.


                                       ___/s/ Lewis S. Wiener_____
                                       Lewis S. Wiener



# Summons

In the matter of _US Viking LLC (EIN 66-0582430)_

Internal Revenue Service (Division): _Large and Mid-Size Business_
Industry/Area (name or number): _International Compliance/Territory 1/Group 1304_

Periods: _January 1, 2002 through December 31, 2002_

## The Commissioner of Internal Revenue

**To:** _Lee Perryman, Director Broadcast Technology, Associated Press_

**At:** _1825 K Street NW, Suite 800, Washington, DC 20006_

You are hereby summoned and required to appear before _Derek Turpin (badge #95-02192), or his designee_
an officer of the Internal Revenue Service, to give testimony and to bring with you and to produce for examination the following books, records, papers, and other data relating to the tax liability or the collection of the tax liability or for the purpose of inquiring into any offense connected with the administration or enforcement of the internal revenue laws concerning the person identified above for the periods shown.

See Attachment to Summons Issued to Lee Perryman, Director Broadcast Technology, Associated Press, in the Matter of US Viking LLC

**Do not write in this space**

PENGAD-Bayonne, N. J.

**PETITIONER'S EXHIBIT**

A

**Business address and telephone number of IRS officer before whom you are to appear:**

9350 Flair Drive, El Monte, California 91731    (626) 312-5059 (ext. 3018)

**Place and time for appearance at** _Internal Revenue Service, 799 Ninth Street N.W., Washington, DC 20001-4501_

# IRS

on the ___5 th___ day of ___September___ ___2007___ at ___9:00___ o'clock ___a.___ m.
_(year)_

Issued under authority of the Internal Revenue Code this ___25th___ day of ___July___ , ___2007___
_(year)_

**Department of the Treasury
Internal Revenue Service**

**www.irs.gov**

Form 2039 (Rev. 12-2001)
Catalog Number 21405J

_Signature of issuing officer_    Revenue Agent
Title

_Signature of approving officer (if applicable)_    Team Manager
Title

**Part C** — to be given to noticee



# Provisions of the Internal Revenue Code

## Sec. 7602. Examination of books and witnesses

(a) Authority to Summon, etc. - For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary is authorized -

   (1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry.

   (2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary may deem proper, to appear before the Secretary at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and

   (3) To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry.

(b) Purpose may include inquiry into offense. - The purposes for which the Secretary may take any action described in paragraph (1), (2), or (3) of subsection (a) include the purpose of inquiring into any offense connected with the administration or enforcement of the internal revenue laws.

(c) Notice of contact of third parties. -

   (1) General Notice. - An officer or employee of the Internal Revenue Service may not contact any person other than the taxpayer with respect to the determination or collection of the tax liability of such taxpayer without providing reasonable notice in advance to the taxpayer that contacts with persons other than the taxpayer may be made.

   (2) Notice of specific contacts. - The Secretary shall periodically provide to a taxpayer a record of persons contacted during such period by the Secretary with respect to the determination or collection of the tax liability of such taxpayer. Such record shall also be provided upon request of the taxpayer.

   (3) Exceptions. - This subsection shall not apply-

      (A) to any contact which the taxpayer has authorized,

      (B) if the Secretary determines for good cause shown that such notice would jeopardize collection of any tax or such notice may involve reprisal against any person, or

      (C) with respect to any pending criminal investigation.

(d) No administrative summons when there is Justice Department referral.-

   (1) Limitation of authority. - No summons may be issued under this title, and the Secretary may not begin any action under section 7604 to enforce any summons, with respect to any person if a Justice Department referral is in effect with respect to such person.

   (2) Justice Department referral in effect. - For purposes of this subsection-

      (A) In general. - A Justice Department referral is in effect with respect to any person if-

         (i) the Secretary has recommended to the Attorney General a grand jury investigation of, or the criminal prosecution of, such person for any offense connected with the administration or enforcement of the internal revenue laws or

         (ii) any request is made under section 6103(h)(3)(B) for the disclosure of any return or return information (within the meaning of section 6103(b)) relating to such person.

      (B) Termination. - A Justice Department referral shall cease to be in effect with respect to a person when-

         (i) the Attorney General notifies the Secretary, in writing, that -

           (I) he will not prosecute such person for any offense connected with the administration or enforcement of the internal revenue laws,

           (II) he will not authorize a grand jury investigation of such person with respect to such an offense, or

           (III) he will discontinue such a grand jury investigation,

         (ii) a final disposition has been made of any criminal proceeding pertaining to the enforcement of the internal revenue laws which was instituted by the Attorney General against such person, or

         (iii) the Attorney General notifies the Secretary, in writing, that he will not prosecute such person for any offense connected with the administration or enforcement of the internal revenue laws relating to the request described in sub paragraph (A)(ii).

   (3) Taxable years, etc., treated separately. - For purposes of this subsection, each taxable period (or, if there is no taxable period, each taxable event) and each tax imposed by a separate chapter of this title shall be treated separately.

(e) Limitation on examination on unreported income. - The Secretary shall not use financial status or economic reality examination techniques to determine the existence of unreported income of any taxpayer unless the Secretary has a reasonable indication that there is a likelihood of such unreported income.

Authority to examine books and witness is also provided under sec. 6420 (e)(2) - Gasoline used on farms: sec. 6421(g)(2) - Gasoline used for certain nonhighway purposes by local transit systems, or sold for certain exempt purposes; and sec. 6427(j)(2) - Fuels not used for taxable purposes.

## Sec. 7603. Service of summons

(a) In general - A summons issued under section 6420(e)(2), 6421(g)(2), 6427(j)(2), or 7602 shall be served by the Secretary, by an attested copy delivered in hand to the person to whom it is directed, or left at his last and usual place of abode; and the certificate of service signed by the person serving the summons shall be evidence of the facts it states on the hearing of an application for the enforcement of the summons. When the summons requires the production of books, papers, records, or other data, it shall be sufficient if such books, papers, records, or other data are described with reasonable certainty

(b) Service by mail to third-party recordkeepers. -

   (1) In general. - A summons referred to in subsection (a) for the production of books, papers, records, or other data by a third-party recordkeeper may also be served by certified or registered mail to the last known address of such recordkeeper.

   (2) Third party record keeper. - For purposes of paragraph (1), the term *third-party recordkeeper* means -

      (A) any mutual savings bank, cooperative bank, domestic building and loan association, or other savings institution chartered and supervised as a savings and loan or similar association under Federal or State law, any bank (as defined in section 581), or any credit union (within the meaning of section 501 (c)(14)(A));

      (B) any consumer reporting agency (as defined under section 603(f) of the Fair Credit Reporting Act (15 U.S.C. 1681 a(f));

      (C) any person extending credit through the use of credit cards or similar devices;

      (D) any broker (as defined in section 3(a)(4) of the Securities Exchange Act of 1934 (15 U.S.C. 78c(a)(4));

      (E) any attorney;

      (F) any accountant;

      (G) any barter exchange (as defined in section 6045(c)(3));

      (H) any regulated investment company (as defined in section 851) and any agent of such regulated investment company when acting as an agent thereof;

      (I) any enrolled agent; and

      (J) any owner or developer of a computer software source code (as defined in section 7612(d)(2)). Subparagraph (J) shall apply only with respect to a summons requiring the production of the source code referred to in subparagraph (J) or the program and data described in section 7612(b)(1)(A)(ii) to which source code relates.

## Sec. 7604. Enforcement of summons

(a) Jurisdiction of District Court. - If any person is summoned under the internal revenue laws to appear, to testify, or to produce books, papers, records, or other data, the United States district court for the district in which such person resides or is found shall have jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, records, or other data.

(b) Enforcement. - Whenever any person summoned under section 6420(e)(2), 6421 (g)(2), 6427(j)(2), or 7602 neglects or refuses to obey such summons, or to produce books, papers, records, or other data, or to give testimony, as required, the Secretary may apply to the judge of the district court or to a United States Commissioner [1] for the district within which the person so summoned resides or is found for an attachment against him as for a contempt, it shall be the duty of the judge or commissioner [1] to hear the application, and, if satisfactory proof is made, to issue an attachment, directed to some proper officer, for the arrest of such person, and upon his being brought before him to proceed to a hearing of the case; and upon such hearing the judge or the United States Commissioner [1] shall have power to make such order as he shall deem proper, not inconsistent with the law for the punishment of contempts, to enforce obedience to the requirements of the summons and to punish such person for his default or disobedience.

[1] Or United States magistrate, pursuant to P L. 90-578.

✦ ✦ ✦ ✦ ✦

## Sec. 7605. Time and place of examination

(a) Time and place. - The time and place of examination pursuant to the provisions of section 6420(e)(2), 6421 (g)(2), 6427(j)(2), or 7602 shall be such time and place as may be fixed by the Secretary and as are reasonable under the circumstances. In the case of a summons under authority of paragraph (2) of section 7602, or under the corresponding authority of section 6420(e)(2), 6421 (g)(2) or 6427(j)(2), the date fixed for appearance before the Secretary shall not be less than 10 days from the date of the summons.

## Sec. 7610. Fees and costs for witnesses

(a) In general. - The secretary shall by regulations establish the rates and conditions under which payment may be made of -

   (1) fees and mileage to persons who are summoned to appear before the Secretary, and

   (2) reimbursement for such costs that are reasonably necessary which have been directly incurred in searching for, reproducing, or transporting books, papers, records, or other data required to be produced by summons.

(b) Exceptions. - No payment may be made under paragraph (2) of subsection (a) if -

   (1) the person with respect to whose liability the summons is issued has a proprietary interest in the books, papers, records or other data required to be produced, or

   (2) the person summoned is the person with respect to whose liability the summons is issued or an officer, employee, agent, accountant, or attorney of such person who, at the time the summons is served, is acting as such.

(c) Summons to which section applies. - This section applies with respect to any summons authorized under section 6420(e)(2), 6421 (g)(2), 6427(j)(2), or 7602.

## Sec. 7210. Failure to obey summons

Any person who, being duly summoned to appear to testify, or to appear and produce books, accounts, records, memoranda or other papers, as required under sections 6420(e)(2), 6421(g)(2), 6427(j)(2), 7602, 7603, and 7604(b), neglects to appear or to produce such books, accounts, records memoranda, or other papers, shall, upon conviction thereof, be fined not more than $1,000, or imprisoned not more than 1 year, or both, together with costs of prosecution.

**To:**                                                                      **Date:**

**Address:**

---

Enclosed is a copy of a summons served by the IRS to examine records made or kept by, or to request testimony from, the person summoned. If you object to the summons, you are permitted to file a lawsuit in the United States district court in the form of a petition to quash the summons in order to contest the merits of the summons.

## General Directions

1. You must file your petition to quash in the United States district court for the district where the person summoned resides or is found.

2. You must file your petition within 20 days from the date of this notice and pay a filing fee as may be required by the clerk of the court.

3. You must comply with the Federal Rules of Civil Procedure and local rules of the United States district court.

## Instructions for Preparing Petition to Quash

1. Entitle your petition "Petition to Quash Summons."

2. Name the person or entity to whom this notice is directed as the petitioner.

3. Name the United States as the respondent.

4. State the basis for the court's jurisdiction, as required by Federal Rule of Civil Procedure. See Internal Revenue Code Section 7609(h).

5. State the name and address of the person or entity to whom this notice is directed and state that the records or testimony sought by the summons relate to that person or entity.

6. Identify and attach a copy of the summons.

7. State in detail every legal argument supporting the relief requested in your petition. See Federal Rules of Civil Procedure. Note that in some courts you may be required to support your request for relief by a sworn declaration or affidavit supporting any issue you wish to contest.

8. Your petition must be signed as required by Federal Rule of Civil Procedure 11.

9. Your petition must be served upon the appropriate parties, including the United States, as required by Federal Rule of Civil Procedure 4.

10. At the same time you file your petition with the court, you must mail a copy of your petition by certified or registered mail to the person summoned and to the IRS. Mail the copy for the IRS to the officer whose name and address are shown on the face of this summons. See 7609(b)(2)(B).

The court will decide whether the person summoned should be required to comply with the summons request. Your filing of a petition to quash may suspend the running of the statute of limitations for civil liability or for criminal prosecution for offenses under the tax laws for the tax periods to which the summons relates. Such suspension would be in effect while any proceeding (or appeal) with respect to the summons is pending.

The relevant provisions of the Internal Revenue Code are enclosed with this notice. If you have any questions, please contact the Internal Revenue Service officer before whom the person summoned is to appear. The officer's name and telephone number are shown on the summons.



Department of the Treasury
**Internal Revenue Service**

**www.irs.gov**

Form 2039 (Rev. 12-2001)
Catalog Number 21405J

**Part D — to be given to noticee**

## Sec. 7609. Special procedures for third-party summons

(a) Notice-

(1) In general. - If any summons to which this section applies requires the giving of testimony on or relating to, the production of any portion of records made or kept on or relating to, or the production of any computer software source code (as defined in 7612(d)(2)) with respect to, any person (other than the person summoned) who is identified in the summons, then notice of the summons shall be given to any person so identified within 3 days of the day on which such service is made, but no later than the 23rd day before the day fixed in the summons as the day upon which such records are to be examined. Such notice shall be accompanied by a copy of the summons which has been served and shall contain an explanation of the right under subsection (b)(2) to bring a proceeding to quash the summons.

(2) Sufficiency of notice. - Such notice shall be sufficient if, on or before such third day, such notice is served in the manner provided in section 7603 (relating to service of summons) upon the person entitled to notice, or is mailed by certified or registered mail to the last known address of such person, or, in the absence of a last known address, is left with the person summoned. If such notice is mailed, it shall be sufficient if mailed to the last known address of the person entitled to notice or, in the case of notice to the Secretary under section 6903 of the existence of a fiduciary relationship, to the last known address of the fiduciary of such person, even if such person or fiduciary is then deceased, under a legal disability, or no longer in existence.

(3) Nature of summons. - Any summons to which this subsection applies (and any summons in aid of collection described in subsection (c)(2)(D)) shall identify the taxpayer to whom the summons relates or the other person to whom the records pertain and shall provide such other information as will enable the person summoned to locate the records required under the summons.

(b) Right to intervene; right to proceeding to quash. -

(1) Intervention. - Notwithstanding any other law or rule of law, any person who is entitled to notice of a summons under subsection (a) shall have the right to intervene in any proceeding with respect to the enforcement of such summons under section 7604.

(2) Proceeding to quash. -

(A) In general. - Notwithstanding any other law or rule of law, any person who is entitled to notice of a summons under subsection (a) shall have the right to begin a proceeding to quash such summons not later than the 20th day after the day such notice is given in the manner provided in subsection (a)(2). In any such proceeding, the Secretary may seek to compel compliance with the summons.

(B) Requirement of notice to person summoned and to Secretary. - If any person begins a proceeding under subparagraph (A) with respect to any summons, not later than the close of the 20-day period referred to in subparagraph (A) such person shall mail by registered or certified mail a copy of the petition to the person summoned and to such office as the Secretary may direct in the notice referred to in subsection (a)(1).

(C) Intervention, etc. - Notwithstanding any other law or rule of law, the person summoned shall have the right to intervene in any proceeding under subparagraph (A). Such person shall be bound by the decision in such proceeding (whether or not the person intervenes in such proceeding).

(c) Summons to which section applies. -

(1) In general. - Except as provided in paragraph (2), this section shall apply to any summons issued under paragraph (2) of section 7602(a) or under sections 6420(e)(2), 6421(g)(2), 6427(j)(2), or 7612.

(2) Exceptions. - This section shall not apply to any summons

(A) served on the person with respect to whose liability the summons is issued, or any officer or employee of such person;

(B) issued to determine whether or not records of the business transaction or affairs of an identified person have been made or kept;

(C) issued solely to determine the identity of any person having a numbered account (or similar arrangement) with a bank or other institution described in section 7603(b)(2)(A);

(D) issued in aid of the collection of-

(i) an assessment made or judgment rendered against the person with respect to whose liability the summons is issued, or

(ii) the liability at law or in equity of any transferee or fiduciary of any person referred to in clause (i).

(E) - (i) issued by a criminal investigator of the Internal Revenue Service in connection with the investigation of an offense connected with the administration or enforcement of the internal revenue laws, and

(ii) served on a person who is not a third-party recordkeeper (as defined in section 7603(b)), or

(F) described in subsection (f) or (g).

(3) Records. - For purposes of this section, the term records includes books, papers, and other data.

(d) Restriction on examination of records. - No examination of any records required to be produced under a summons as to which notice is required under subsection (a) may be made -

(1) before the close of the 23rd day after the day notice with respect to the summons is given in the manner provided in subsection (a)(2), or

(2) where a proceeding under subsection (b)(2)(A) was begun within the 20-day period referred to in such subsection and the requirements of subsection (b)(2)(B) have been met, except in accordance with an order of the court having jurisdiction of such proceeding or with the consent of the person beginning the proceeding to quash.

(e) Suspension of Statute of Limitations. -

(1) Subsection (b) action. - If any person takes any action as provided in subsection (b) and such person is the person with respect to whose liability the summons is issued (or is the agent, nominee, or other person acting under the direction or control of such person), then the running of any period of limitations under section 6501 (relating to the assessment and collection of tax) or under section 6531 (relating to criminal prosecutions) with respect to such person shall be suspended for the period during which a proceeding, and appeals therein, with respect to the enforcement of such summons is pending.

(2) Suspension after 6 months of service of summons. - In the absence of the resolution of the summoned party's response to the summons, the running of any period of limitations under section 6501 or under section 6531 with respect to any person with respect to whose liability the summons is issued (other than a person taking action as provided in subsection (b)) shall be suspended for the period-

(A) beginning on the date which is 6 months after the service of such summons, and

(B) ending with the final resolution of such response.

(f) Additional requirements in the case of a John Doe summons. -

Any summons described in subsection (c)(1) which does not identify the person with respect to whose liability the summons is issued may be served only after a court proceeding in which the Secretary establishes that -

(1) the summons relates to the investigation of a particular person or ascertainable group or class of persons,

(2) there is a reasonable basis for believing that such person or group or class of persons may fail or may have failed to comply with any provision of any internal revenue law, and

(3) the information sought to be obtained from the examination of the records or testimony (and the identity of the person or persons with respect to whose liability the summons is issued) is not readily available from other sources.

(g) Special exception for certain summonses. -

A summons is described in this subsection if, upon petition by the Secretary, the court determines, on the basis of the facts and circumstances alleged, that there is reasonable cause to believe the giving of notice may lead to attempts to conceal, destroy, or alter records relevant to the examination, to prevent the communication of information from other persons through intimidation, bribery, or collusion, or to flee to avoid prosecution, testifying, or production of records.

(h) Jurisdiction of district court; etc. -

(1) Jurisdiction. - The United States district court for the district within which the person to be summoned resides or is found shall have jurisdiction to hear and determine any proceedings brought under subsection (b)(2), (f), or (g). An order denying the petition shall be deemed a final order which may be appealed.

(2) Special rule for proceedings under subsections (f) and (g). - The determinations required to be made under subsections (f) and (g) shall be made ex parte and shall be made solely on the petition and supporting affidavits.

(i) Duty of summoned party. -

(1) Recordkeeper must assemble records and be prepared to produce records- On receipt of a summons to which this section applies for the production of records, the summoned party shall proceed to assemble the records requested, or such portion thereof as the Secretary may prescribe, and shall be prepared to produce the records pursuant to the summons on the day on which the records are to be examined.

(2) Secretary may give summoned party certificate. - The Secretary may issue a certificate to the summoned party that the period prescribed for beginning a proceeding to quash a summons has expired and that no such proceeding began within such period, or that the taxpayer consents to the examination.

(3) Protection for summoned party who discloses. - Any summoned party, or agent or employee thereof, making a disclosure of records of testimony pursuant to this section in good faith reliance on the certificate of the Secretary or an order of a court requiring production of records or the giving of such testimony shall not be liable to any customer or other person for such disclosure.

(4) Notice of suspension of statute of limitations in the case of a John Doe summons. - In the case of a summons described in subsection (f) with respect to which any period of limitations has been suspended under subsection (e)(2), the summoned party shall provide notice of such suspension to any person described in subsection (f).

(j) Use of summons not required. -

Nothing in this section shall be construed to limit the Secretary's ability to obtain information, other than by summons, through formal or informal procedures authorized by sections 7601 and 7602.

**Attachment to Summons Issued to Lee Perryman, Director Broadcast Technology, Associated Press, in the Matter of US Viking LLC**

Unless specified otherwise, all information requested relates to documents and records in effect or created since the inception of the business relationship between Associated Press and William Neville, Neville and Company, and US Viking to the present.

1. Names, phone numbers, and mailing addresses of all Associated Press (AP) employees who were involved in the negotiation, analysis, or write-up of the contract between Associated Press and Neville and Company dated August 27, 1996 and the contract between Associated Press and US Viking dated November 27, 2000. Press.

2. Signed copies of all contracts and agreements, including amendments and all schedules and attachments, between AP and William Neville, Neville and Co., or US Viking, in addition to the contracts mentioned in item #1.

3. All internal and external letters, memos, emails, or other correspondences related to the negotiation and execution of all contracts between Associated Press (AP) and William Neville, Neville and Co., or US Viking.

4. Names, phone numbers, and mailing addresses of all Associated Press employees who have ever worked with the ENPS program, either in the programming, development, planning, or administration of the ENPS program.

5. Names, phone numbers, and mailing addresses of all Associated Press employees who have had direct contact with William Neville or employees of US Viking or Neville and Company.

6. Article 10.2, page 14 of the "Software Development Services, Support and Marketing Agreement by and Between The Associated Press and US Viking, LLC", indicates that US Viking was to provide a list of their employees or personnel who are to work on ENPS and show their employment status. There were also to be updates to this list as employment status or personnel changed. Provide the original such list delivered by Neville & Co. to AP and all subsequent updates.

7. Copies of all source and object codes, including previous versions, of the ENPS program. Use CDs as the recording media and provide tarballs (or other common archive format) of major deliverables of ENPS source code from Neville & Co to AP, as follows:
Provide a tarball for the pilot version of ENPS, one for the trial version of ENPS, one for the sign off version of ENPS and a tarball of the most significant (judged by the versioning scheme used for ENPS) release for each subsequent year until the present.

8. Provide a list of all deliveries of ENPS software including updates that you received from Neville & Company or US Viking, sorted by date. Include in the list:
   a. Date of delivery
   b. One line description of what was delivered
   c. Version #
   d. Reason (regular update, emergency patch, security patch)

9. All operational and management reports prepared by Associated Press related to the ENPS program.

**Attachment to Summons Issued to Lee Perryman, Director Broadcast Technology, Associated Press, in the Matter of US Viking LLC**

10. All operational and management reports related to the ENPS program received from William Neville, US Viking or Neville and Company.

11. Provide a report, in a spreadsheet format, with the entries of the **Incident Database** starting from the earliest data available until the present, and sorted by date. Include in the report:
    a. Incident Number
    b. Submission date
    c. Resolution date
    d. Severity code
    e. Impact
    f. Subject title
    g. Name of requestor
    h. Name of person the incident was assigned to
    i. Name of person who provided the resolution (if different from above)
    j. Status designation

12. Provide a report, in a spreadsheet format, with the entries of the **Bugs Database** starting from the earliest data available until the present, and sorted by date. Include in the report:
    a. Bug Number
    b. Submission date
    c. Resolution date
    d. Severity code
    e. Impact
    f. Subject title
    g. Name of requestor
    h. Name of person the incident was assigned to
    i. Name of person who provided the resolution (if different from above)
    j. Status designation

13. Provide a report, in a spreadsheet format, with the entries of the **Enhancements Database** starting from the earliest data available until the present, and sorted by date. Include in the report:
    a. Enhancement Number
    b. Submission date
    c. Resolution date
    d. Impact
    e. Subject title
    f. Name of requestor
    g. Name of person the incident was assigned to
    h. Name of person who provided the resolution (if different from above)
    i. Status designation

14. Name, phone numbers, and mailing addresses of all persons involved in the creation of the ENPS Product Release Notices, and source documents used in preparing the Notices.

**Internal Revenue Service**
Stop 4115
3848 West Columbus Drive, Ste. A
Tampa, Florida 33607

**Department of the Treasury**

|  |  |
|---|---|
| **Taxpayer TIN:** | 66-0582430 |
| **Tax Form:** | 1065 |
| **Tax Period(s):** | 200212 |
| **Person to Contact:** | Andrew M. Daxon |
| **Employee ID:** | 59-01049 |
| **Telephone Number:** | 813-315-2304 |
| **Fax Number:** | 813-315-2458 |

**Date:** April 25, 2005

U.S. Viking, LLC
Robert Neville, Managing Member
P. O. Box 3040
Kingshill, St. Croix, V.I. 00851

Dear Mr. Neville,

The 2002 tax year for the entity identified above has been selected for an inquiry to determine your possible filing requirements with the United States. The purpose of our first meeting is to understand your business operations and policies and to begin the inquiry process. Please have the items listed on the attached Form 4564, *Information Document Request,* available at our first appointment.

**What You Need To Do**

Please contact me at the telephone number provided above on or before May 6, 2005 to discuss the scheduled appointment and the inquiry. The initial appointment has been scheduled for **May 17, 2005** at 9:00 a.m. to take place at the office of U.S. Viking, LLC located in St. Croix, Virgin Islands.

The issues listed below are the preliminary items identified for inquiry. During the course of the inquiry, it may be necessary to expand or contract the items. If this should occur, I will advise you of the change.

- Source of Income Earned by Partnership
- Partnership and Partner Transactions
- Employment Tax Filings

**Someone May Represent You**

You may have someone represent you during any part of this inquiry. If you want someone to represent you, please provide me with the following at our first appointment:

- A completed Form 2848, *Power of Attorney and Declaration of Representative,* or



PETITIONER'S
EXHIBIT
B

1

- Form 8821, *Tax Information Authorization,*

If you prefer you may mail or fax the form to me prior to our first appointment. You can get these forms from our office, or from our web site at www.irs.gov, or by calling 1-800-829-3676. If you decide that you wish to get representation after the inquiry has started, we will delay further inquiry activity until you can secure representation.

**Your Rights As A Taxpayer**

We encourage you to read the Declaration of Taxpayer Rights found in the enclosed Publication 3498, *The Examination Process.* This publication also discusses general rules and procedures we follow in examinations and will follow in this inquiry. It explains what happens before, during, and after an examination, and appeal and payment procedures.

Thank you for your cooperation, and I look forward to hearing from you by

Sincerely,

*Linda Bruce, for*

Andrew M. Daxon
Internal Revenue Agent

Enclosure:
Publication 3498
Form 4564

2

**25.5.6.10.1 (10-04-2006)**
**Conditions For Summoning a Source Code**

1. IRC 7612:
    A. generally prohibits the Service from issuing a summons or enforcing a summons to produce or analyze any tax related computer software source code (unless conditions below are satisfied),
    B. establishes a number of protections against the disclosure and improper use of trade secrets and confidential information that the Service acquires in the course of any examination with respect to any taxpayer, and
    C. requires the Service to demonstrate three things before issuing a summons for a computer software source code. These are
    4. an inability to reasonably ascertain the correctness of an item on a return from the taxpayer's books, papers, records or other data, or by using the executable code and associated data to which the source code relates,
    5. reasonably specific identification of the portion, item, or component of the source code it needs to verify the correctness of such item on the return, and
    6. that the need for the portion, item, or component of such source code outweighs the risks of unauthorized disclosure of trade secrets.
        • This determination must be made by a management official not lower than the group/case manager.
        • The group/case manager should contact Associate Area Counsel regarding how this determination should be made.

2. Exceptions:

    The general prohibition does not apply to:

        . criminal tax investigations.
        A. tax-related computer software source code acquired or developed by the taxpayer or a related person primarily for internal use,
        B. communications between the owner of the tax-related computer software source code and the taxpayer or related persons, and
        C. tax-related computer software source code which is required to be provided or made available under another Code provision.

3. Cooperation Required: If the taxpayer fails to turn over the executable code and the associated data, and the owner fails to turn over the executable code within 180 days, the Service does not have to demonstrate that it is unable to otherwise reasonably ascertain the correctness of any item on a return from the taxpayer's books, papers, records, or other data, or from the executable code and any associated data, and the Service does not have to



PERIGARD—Bayonne, N. J.

**PETITIONER'S EXHIBIT**

C

identify the portion, item, or component of the source code needed to verify the correctness of such item on the return before a summons for the computer software source code may be issued.

**Note:**

Actions required by the Service to trigger the 180-day period under section 7612(b)(3) are as follows. A group manager or higher level management official must make a determination that it is not feasible to determine the correctness of an item without access to the executable code and associated data. A group manager or higher level management official must also make a determination that the need for the computer software source code or any portion thereof outweighs the risk of unauthorized disclosure of trade secrets. (See IRM 25.5.6.10.1(3) above.) An initial Information Document Request (IDR) must be issued to the taxpayer for the executable code and associated data. The IDR shall recommend that the taxpayer advise the software owner of the request for the executable code. Since the Service must wait 180 days after making a formal request before issuing a summons for the source code, the Service may require a limited time response period for the initial IDR. If the taxpayer fails to turn over the executable code and associated data in response to the IDR, correspondence requesting the executable code and associated data will be issued to the taxpayer, and correspondence requesting the executable code will be issued to the software owner advising the taxpayer and the software owner that the requests are being made pursuant to IRC 7612(b)(3)(B). The 180-day period starts with the issuance of the formal requests. Summonses for the executable code and associated data may be issued with the formal requests but must be coordinated with Associate Area Counsel.

## 25.5.6.10.2 (10-04-2006)
## Safeguards to Ensure Protection of Trade Secrets and Other Confidential Information

1. Under IRC 7612(c), in any proceeding to enforce a summons for any portion of software (which includes both source code and the executable code), a court may issue a protective order to prevent the disclosure of such software. In addition, any software that the Service obtains during the course of any examination is subject to the safeguards listed below. However, prior to receiving any software, whether by court order or voluntarily from the taxpayer or the software owner, Associate Area Counsel must be consulted in order to establish the procedures that must be followed to comply with the statutory (and judicial, where applicable) requirements for safeguarding the software. The safeguards include:
   A. complying with any protective order entered by a court.
   B. only using the software in connection with the examination of the taxpayer's return with regard to which it was received, and related Appeals and judicial proceedings.

C. providing, in advance, to the taxpayer and owner of the software a written list of all individuals who will analyze or otherwise have access to the software.

D. maintaining the software in a secure area or place, and in case of computer software source code, not removing from the owner's place of business without the owner's consent, unless the removal is pursuant to a court order.

E. copying only when necessary in connection with the analysis and numbering any copies of the software.

F. returning to the owner the software and all copies at the conclusion of the proceedings, and deleting any working copies.

G. not decompiling or disassembling the software.

H. treating the software as return information for purposes of IRC section 6103.

2. Responsibilities:

1. In an examination controlled by the Coordinated Examination Program, the Case Manager has the ultimate responsibility for adherence to the required safeguards and completion of all necessary documentation. He or she will insure that all team members are aware of and follow all of the required provisions of this section. In a general program case, the revenue agent conducting the examination is responsible for the safeguards and documentation. Examiners must coordinate all source code and software summonses through Associate Area Counsel, who will coordinate with the Collection, Bankruptcy and Summonses Division and Associate Chief Counsel (International).

## 25.5.6.10.3  (10-04-2006)
## Definitions

1. The following definitions apply for purposes of IRC 7612:

A. *Software* includes computer software source code and computer software executable code.

B. *Computer software source code* means
   • the code written by a programmer using a programming language which is comprehensible to appropriately trained persons and is not capable of directly being used to give instructions to a computer,
   • related programmers' notes, design documents, memoranda, and similar documentation, and
   • related customer communications.

C. *Computer software executable code* means
   • any object code, machine code, or other code readable by a computer when loaded into its memory and used directly by such computer to execute instructions, and
   • any related user manuals.

D. *Owner* shall, with respect to any software, include the developer of the software.

E. *Related person* shall be treated as related to another person if such persons are related persons under IRC section 267 or 707(b).

F. *Tax-related computer software source code* means the computer source code for any computer software program intended for accounting, tax return preparation or compliance, or tax planning.

**25.5.6.10.4  (04-30-1999)**
**Effective Date**

1. The new summons rules are effective for summonses issued, and software acquired, after 7/22/98.

2. The software protection rules apply to
   A. Software acquired by IRS after 7/22/98.
   B. Previously acquired software beginning 90 days after 7/22/98. (However, outside experts do not have to sign a 2-year non-competition agreement.)

   **Note:**

   The new rules do not require the IRS to reissue any software summons.

**25.5.6.10.5  (04-30-1999)**
**Miscellaneous**

1. On some occasions, the IRS has found it helpful to employ outside experts to assist in the analysis of a particular source code. The outside expert used must agree in writing:
   A. Not to disclose the software to any person other than persons entitled to disclosure under section 6103, and
   B. Not to participate for 2 years in the development of similar software.

2. The Service must provide the taxpayer and the owner of any interest in the software with a written agreement between the Service and any person who is not an officer or employee of the United States and who will analyze or have access to such software which contains the above agreement.

2/24/87

TAX IMPLEMENTATION AGREEMENT BETWEEN

THE UNITED STATES OF AMERICA

AND

THE VIRGIN ISLANDS

The Government of the United States of America and the Government
of the Virgin Islands desiring to conclude an Agreement
(hereinafter referred to as the "Agreement") for the exchange of
information and mutual assistance with respect to taxes in order
to prevent the evasion or avoidance of United States or Virgin
Islands taxes have agreed as follows:



PETITIONER'S
EXHIBIT
D

## Article 1

### SCOPE OF AGREEMENT

This Agreement is intended to provide for mutual assistance in tax matters, including exchanges of information, for purposes of administering the tax laws of the respective Governments and especially to prevent avoidance or evasion of the Governments' respective fiscal laws. This Agreement is the implementing agreement described in section 1277 of the Tax Reform Act of 1986, Pub. L. No. 99-514. The provisions of this Agreement are subject to provisions of the statutes, regulations, and published procedures of the Contracting Governments.

Upon entry into force, this Agreement replaces any and all prior tax coordination agreements and implementing agreements between the respective Governments.

## Article 2

### TAXES COVERED

1. This Agreement shall apply to the following taxes imposed by or on behalf of a Contracting Government:

    a)   in the case of the United States of America, all taxes imposed by the Code, and

    b)   in the case of the Virgin Islands, all taxes imposed by the Code as it applies in the Virgin

Islands and all local income taxes imposed by the
Virgin Islands as authorized by the Tax Reform Act
of 1986.

2. This Agreement shall apply also to any identical or
substantially similar taxes imposed after the date of signature
of the Agreement in addition to or in place of the existing
taxes. The competent authority of each Government shall
notify the other of significant changes in laws which may affect
the obligations of that Government pursuant to this Agreement.

3. This Agreement shall not apply to the extent that an
action or proceeding concerning taxes covered by this Agreement
is barred by the applicant Government's statute of limitations.

## Article 3
### DEFINITIONS

1. In this Agreement, unless otherwise defined:

   a) The term "Code" shall mean the Internal Revenue
       Code of 1986, as amended, and any predecessor or
       successor statutes.

   b) The term "competent authority" means:

      (i) in the case of the United States of America,
          the Secretary of the Treasury or his
          delegate, and

      (ii) in the case of the Virgin Islands, the

— 4 —

Director, Virgin Islands Bureau of Internal
Revenue or his delegate.

c)   The term "Contracting Government" means the United
States or the Virgin Islands as the context
requires.

d)   The term "non-Virgin Islands source income" means
income for which the source (under source rules
promulgated by the U.S. Internal Revenue Service)
is not the Virgin Islands.

e)   The term "person" includes an individual and a
partnership, corporation, company, trust, estate,
association or other legal entity.

f)   The term "tax" means any tax to which the
Agreement applies.

g)   The term "taxpayer" means:

(i)   in the case of the United States, any person
subject to the provisions of the Code, and

(ii)  in the case of the Virgin Islands, any person
subject to the provisions of the Code as it
applies in the Virgin Islands or any local
income tax laws imposed by the Virgin
Islands.

h)   For purposes of determining the geographical area
within which jurisdiction to compel production of
information under this Agreement may be exercised,
the term "United States" means the United States

of America, including Puerto Rico, Guam, American
Samoa, the Commonwealth of the Northern Mariana
Islands, and any other United States possession or
territory and the territorial waters thereof, but
not including the Virgin Islands.  Such
jurisdiction may be exercised if the information
or the custodian of the information is located
within the United States.

i)    For purposes of determining the geographical area
within which jurisdiction to compel production of
information under this Agreement may be exercised,
the term "Virgin Islands" means the territorial
domain, lands and waters acquired by the United
States through cession of the Danish West Indian
Islands by the Convention between the United
States of America and His Majesty the King of
Denmark entered into August 4, 1916, and ratified
by the Senate on September 7, 1916 (39 Stat.
1706).  Such jurisdiction may be exercised if the
information or the custodian of the information is
located within the Virgin Islands.

2.    Any term not defined in this Agreement, unless the
context otherwise requires or the competent authorities agree to
a common meaning pursuant to the provisions of Article 5, shall
have the meaning which it has under the laws of the Contracting

- 6 -

Governments relating to the taxes which are the subject of this Agreement.

## Article 4
### EXCHANGE OF INFORMATION

1.    The competent authorities of the Contracting Governments shall exchange information to administer and enforce the domestic laws of the Contracting Governments concerning taxes covered by this Agreement.   Information shall be exchanged to fulfill the purposes of this Agreement without regard to whether the information relates to, or is held by, a taxpayer of a Contracting Government.   Procedures for exchange of information are set forth in Appendix A, Limitations on Disclosure of Tax Information, which is incorporated by reference and made a part of this Agreement.

2.    The competent authorities of the Contracting Governments shall automatically transmit information to each other for the purposes referred to in paragraph 1.   The competent authorities shall determine the items of information to be exchanged pursuant to this paragraph and the procedures to be used to exchange such items of information.

      a)    It is intended that the United States shall routinely supply to the Virgin Islands the following information, to the extent available and

- 7 -

subject to the tolerances and criteria to be
agreed upon by the competent authorities:

(i)   copies of reports of individual, partnership,
corporate, and employment audit changes that
disclose information relevant to the Virgin
Islands;

(ii)  copies of Forms 5335 (Income Subject to
Withholding under Chapter 3, Internal Revenue
Code as reported on Form 1042S, and any
successor forms) that disclose information
relevant to the Virgin Islands;

(iii) copies of Schedule K-1 of Form 1065 (U.S.
Partnership Return of Income) and audit
results, when the partnership return is
examined and it appears the examination will
affect returns of Virgin Islands taxpayers;

(iv)  copies of responses to Forms 4901, 4902, and
4903, Requests for Information About Tax
Forms, where such reply indicates that the
taxpayer has filed a return with the Virgin
Islands;

(v)   copies of Forms 1099 and all other
information returns where the recipient of
income is a Virgin Islands resident or lists
a Virgin Islands address or the income is
from Virgin Islands sources;

(vi)   copies of the W-2 combined wage reporting tape summarizing Forms W-2VI (U.S. Virgin Islands Wage and Tax Statement) and Forms W-3SS (Transmittal of Wage and Tax Statements) filed with the Social Security Administration by employers in the Virgin Islands, which tape is provided annually to the Internal Revenue Service by the Social Security Administration; and

(vii)   copies of Forms 8279 (Election to be Treated as a FSC or as a Small FSC) that indicate creation or organization of any Foreign Sales Corporation (as defined in Section 922 of the Code) in the Virgin Islands.

b)   It is intended that the Virgin Islands shall routinely supply to the United States the following information, to the extent available and subject to the tolerances and criteria to be agreed upon by the competent authorities:

(i)   copies of reports of individual, partnership, corporate, and employment audit changes that disclose information relevant to the United States;

(ii)   information about the ownership interests of all corporations subject to Virgin Islands tax with non-Virgin Islands source income

- 9 -

that receive a rebate, subsidy or reduction
of Virgin Islands taxes;

(iii)  information about any taxpayer subject to
Virgin Islands tax with non-Virgin Islands
source income who files an income tax return
with the Virgin Islands claiming for the
first time to be a Virgin Islands resident;

(iv)  all corporate information about ownership
interests in any Foreign Sales Corporation
(as defined in section 922 of the Code)
established in the Virgin Islands;

(v)  such information about corporations electing
application of section 936 of the Code as may
be agreed upon by the competent authorities;
and

(vi)  information about any rebates, subsidies or
reductions of tax provided by the Virgin
Islands for income derived by a Virgin
Islands taxpayer from other United States
possessions and territories.

c)  The competent authorities of the Contracting
Governments may agree to expand or limit the
information to be routinely exchanged.

3.  The competent authority of a Contracting Government
shall spontaneously transmit to the competent authority of the
other Government information which has come to the attention of

the first-mentioned Government and which is likely to be relevant to, and bear significantly on, administration and enforcement of the domestic laws concerning taxes of the second-mentioned Government. The competent authorities shall determine the information to be exchanged pursuant to this paragraph and take such measures and implement such procedures as are necessary to ensure that the information is forwarded to the competent authority of the other Government.

4. The competent authority of the requested Government shall endeavor to provide information upon request by the competent authority of the applicant Government for the administration and enforcement of the domestic laws of the Contracting Governments concerning taxes. If the information available in the tax files of the requested Government is not sufficient to enable compliance with the request, that Government shall take the necessary measures to provide the applicant Government with the information requested. Notwithstanding the foregoing, the United States may exercise its rights under section 7602 et seq. of the Code to obtain information in the Virgin Islands without resorting to the procedures set forth in this Agreement. However, in the event the United States so exercises its rights within the Virgin Islands it shall notify the competent authority of the Virgin Islands prior to taking action or as soon as practicable, unless the competent authorities agree to limit notification with respect to certain classes of cases.

5.    The provisions of the preceding paragraphs shall not be construed so as to impose on a Contracting Government the obligation:

a)    to supply particular items of information which are not obtainable under the laws of that Government or of the other Contracting Government;

b)    to supply information which would disclose any trade, business, industrial, commercial or professional secret or trade process;

c)    to supply information, the disclosure of which would be contrary to public policy; or

d)    to disclose information if such disclosure would identify a confidential informant or seriously impair a civil or criminal tax investigation.

6.    Any information received by a Contracting Government shall be subject to Appendix A, Limitations on Disclosure of Tax Information.

## Article 5

MUTUAL AGREEMENT PROCEDURE AND COSTS

1.    The competent authorities of the Contracting Governments shall implement a program to carry out the purposes of this Agreement.    In particular, the competent authorities of the Contracting Governments may amend Appendix A as they deem necessary within the limitations of this Agreement and the Code.

2.    The competent authorities of the Contracting Governments
shall endeavor to resolve by mutual agreement any difficulties or
doubts arising as to the interpretation or application of this
Agreement and may communicate directly for this purpose.    In
particular, the competent authorities may agree to the common
meaning of a term and may determine when costs are extraordinary
for purposes of this Article.

3.    Unless the competent authorities of the Contracting
Governments otherwise agree, ordinary costs incurred in providing
assistance shall be borne by the requested Government and
extraordinary costs incurred in providing assistance shall be
borne by the applicant Government.    The competent authorities of
the Contracting Governments may agree not to charge each other
for the costs of reproduction of information routinely exchanged.

### Article 6

MUTUAL AGREEMENT PROCEDURE ON POTENTIAL DOUBLE TAXATION

1.    When by reason of inconsistent positions taken by the
Contracting Governments, a taxpayer is or would be subject to
inconsistent tax treatment by the two jurisdictions, the
competent authorities of the Contracting Governments shall
endeavor to agree upon the facts and circumstances necessary to
achieve consistent application of the tax laws of the respective
Governments.    In particular, but not by way of limitation, the

competent authorities of the Contracting Governments may consult
together to endeavor to agree:

a)   To the same allocation of income under section 482
     of the Code;

b)   To the same determination of residency of a
     particular taxpayer; or

c)   To the same determination of the source of
     particular items of income.

## Article 7

### OTHER APPLICATIONS OF AGREEMENT

1.   The Contracting Governments agree that when they have
knowledge that a taxpayer has changed residence from one taxing
jurisdiction to the other and seeks to change methods of
accounting (or to make an initial election), no such change or
election shall be permitted until the competent authorities have
consulted and determined that such change or election will not
lead to the evasion or avoidance of taxes imposed by either of
the Contracting Governments.  This paragraph includes initial
adoption of an accounting method or an election inconsistent with
a method or election previously utilized in the other
jurisdiction by the taxpayer.

2.   The Contracting Governments agree that a Virgin Islands
corporation owned or controlled directly or indirectly by a

– 14 –

person whose beneficial ownership is undisclosed (such as through bearer shares) shall be treated as owned or controlled to that extent by a U.S. person for purposes of the respective Governments' tax laws.

3.   The Contracting Governments agree that for purposes of determining whether a person qualifies as a bona fide resident of the Virgin Islands under section 932 of the Code the definition to be used shall be the definition contained in the then-applicable regulations promulgated by the United States.

4.   The Contracting Governments agree that the United States may use its regulatory authority over sourcing rules to determine that certain income (such as income from the sale of property) earned by certain former residents of the United States who become residents of the Virgin Islands is U.S.-source income for purposes of section 934(b) of the Code and therefore tax on such income may not be reduced or rebated by the Virgin Islands.

5.   Any taxpayer information disclosed to the United States shall become "taxpayer return information" as defined by section 6103(b)(3) of the Code and may be redisclosed only in accordance with provisions of the Code or an applicable treaty.

6.   Subject to the restrictions and other provisions of this Agreement and the availability of enforcement resources, the competent authorities will develop a cooperative return selection and examination program with the objective of avoiding unnecessary duplication of examination coverage.

7.    Subject to the restrictions and other provisions of this Agreement, the Contracting Governments will develop a simultaneous examination program for both civil and criminal investigations.

8.    To the extent permitted by law and subject to the availability of enforcement resources, the United States will assist in collecting taxes owed to the Virgin Islands by Virgin Islands taxpayers present in the United States.    The competent authorities will discuss appropriate procedures for facilitating such collection.    Any taxes collected shall be remitted to the Virgin Islands, less the reasonable expenses incurred in collection.

9.    In addition to the exchange of tax and other information, the competent authorities will, to the extent feasible, extend to each other assistance in other tax administration matters.    This may include such activities as taxpayer assistance, stocking tax forms for the public, training of personnel, preparing special statistical studies and compilations of data, development and improvement of tax administration systems and procedures, as well as such other activities as may improve tax administration.

## Article 8

ENTRY INTO FORCE

This Agreement shall enter into force upon signature by the duly authorized representatives of the Contracting Governments.

## Article 9

AMENDMENT AND TERMINATION

1.    This Agreement may be modified or amended by mutual consent of the Contracting Governments.

2.    This agreement shall remain in force until terminated by one of the Contracting Governments.  Either Contracting Government may terminate the Agreement at any time after the Agreement enters into force provided that at least 6 months prior notice of termination has been given.

3.    Any unauthorized use or disclosure of Federal returns or Federal return information as defined by section 6103(b)(1) and (2) of the Code furnished pursuant to this Agreement or inadequate procedures for safeguarding the confidentiality of such returns and return information, constitutes grounds for immediate termination of this Agreement and the exchange of

information thereunder, subject to the rights of administrative

appeal as provided by regulations prescribed by section

6103(p)(7) of the Code.


DONE at Washington, D.C., in duplicate, this 2 4 day of February,

1987.

FOR THE GOVERNMENT OF THE
UNITED STATES OF AMERICA

Assistant Secretary (Tax Policy)
Department of Treasury

FOR THE GOVERNMENT OF THE
VIRGIN ISLANDS OF THE
UNITED STATES

Governor of the Virgin Islands

Director, Bureau of Internal
Revenue of the Virgin Islands

# APPENDIX A

## LIMITATIONS ON DISCLOSURE OF TAX INFORMATION

### Section 1.  Definitions

For purposes of this appendix, the following definitions apply:

1.1  Bureau.  The term "Bureau" means the V.I. Bureau of Internal Revenue and any successor agency.

1.2  IRS.  The term "IRS" means the Internal Revenue Service, U.S. Department of Treasury.

1.3  Possession Audit Agency.  The term "Possession Audit Agency" means the agency, body or commission which is charged under the laws of the Virgin Islands with the responsibility of auditing Possession revenues and programs.

1.4  Possession.  The term "Possession" means the Virgin Islands of the United States.

1.5  Bureau Representative.  The term "Bureau Representative" means a Bureau officer or employee designated in writing by the head of the Bureau, to the Assistant Commissioner (International) at Washington, D.C. and the Service Center Director at Philadelphia, PA, as an individual who is to inspect or receive Federal returns or Federal return information on behalf of the Bureau as provided by section 6103(d) of the Code, but only so long as the duties and employment of such officer or employee require access to Federal returns and Federal return information for purposes of Possession tax administration.

1.6  IRS Representative.  The term "IRS Representative" means an officer or employee of the IRS who has been designated in writing to the head of the Bureau by the Assistant Commissioner (International) at Washington, D.C., or the Service Center Director at Philadelphia, PA, as an individual who is to inspect or receive Possession returns or Possession return information on behalf of the IRS, but only so long as the duties and employment of such officer or employee require access to Possession returns and return information for the purpose of Federal tax administration.

1.7  Federal Return.  The term "Federal Return" is defined in the same manner as provided in section 6103(b)(1) of the Code.

1.8  Federal Return Information.  The term "Federal Return Information" is defined in the same manner as provided in section 6103(b)(2) of the Code.  However, "Federal Return Information" does not include information in the hands of the Possession which it obtained wholly from sources independent from the IRS.

1.9  Possession Return.  The term "Possession Return" is defined in the same manner as provided in section 6103(b)(1) of the Code as it applies in the Virgin Islands.

1.10  Possession Return Information.  The term "Possession Return Information" means a taxpayer's identity, the nature, source, or amount of his/her income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or

- 3 -

tax payments, whether the taxpayer's Possession return was, is
being, or will be examined or subject to other investigation or
processing, or any other data received by, recorded by, prepared
by, furnished to, or collected by the Bureau with respect to a
Possession return or with respect to determination of the
existence, or possible existence, of liability (or the amount
thereof) of any person under the internal revenue laws, or
related statutes, of the Possession, for any tax, penalty,
interest, fine, forfeiture, or other imposition, or offense.

1.11  Inspection.  The term "Inspection" means any
examination of a return or return information.

1.12  Disclosure.  The term "Disclosure" means the making
known to any person in any manner whatever a return or return
information.

1.13  Possession Tax Administration.  The term "Possession
Tax Administration"

(a)  means--

    (i)  the administration, management, conduct,
direction, and supervision of the execution and
application of the revenue laws, or related
statutes of the Possession; and

    (ii)  the development and formulation of Possession tax
policy relating to existing or proposed internal
revenue laws, or related statutes, of the
Possession; and

- 4 -

(b)   includes assessment, collection, enforcement, litigation, and statistical-gathering functions under such laws or statutes.

1.14   Code.   The term "Code" means the Internal Revenue Code of 1986, as amended, and any predecessor or successor statutes.

SECTION 2.   Disclosure of Federal Returns and Federal Return Information

2.1   Pursuant to the laws of the Possession, the Bureau is charged with the responsibility for the administration of Possession taxes imposed on income, inheritance, gifts, gross receipts from the conduct of a trade or business, real property and excise taxes on imports used in the conduct of a trade or business.   Federal returns, and Federal return information (whether originals, paper copy, photocopy, microfilm, magnetic media, or any other form) received from the IRS will be used for the purpose of, and only to the extent necessary in, Possession tax administration.

2.2   This Agreement and Appendix constitute the requisite authorization pursuant to section 6103(d)(1) of the Code for the IRS to disclose to, and permit inspection by, a Bureau Representative of Federal returns and Federal return information relating to taxes imposed by chapters one, two, six, eleven, twelve, twenty-one, twenty-three, twenty-four, thirty-one, thirty-two, forty-four, forty-five, fifty-one, fifty-two, and subchapter D of chapter thirty-six of the Code.

2.3  Upon the occurrence of any change in employment, duties, or other relevant matters affecting a Bureau Representative's right to access to Federal returns and Federal return information or status as a Bureau Representative, the head of the Bureau shall promptly advise in writing the Assistant Commissioner (International) at Washington, D.C. and the Service Center Director at Philadelphia, PA, that such individual is no longer a Bureau Representative.

2.4  A Bureau Representative to whom a Federal return or Federal return information has been disclosed, may thereafter disclose such return or return information:

    (a)   to another employee of the Bureau for the purpose of and only to the extent necessary in the administration of the Possession tax laws for which the Bureau is responsible;

    (b)   to a person described in section 6103(n) of the Code or to any officer or employee of such person, solely for the purpose of Possession tax administration and in a manner consistent with applicable regulations, published rules or procedures, or written communications;

    (c)   to a legal representative of the Bureau personally and directly engaged in, and solely for use in, preparation for a civil or criminal proceeding (or investigation which may result in a proceeding) before a Possession administration body, grand

- 6 -

jury, or court in a matter involving Possession
tax administration, if the returns and return
information satisfy one or more of the criteria
established in section 6103(h)(4)(A), (B) or (C);
and

(d)   to an officer or employee of the Possession audit
agency for the purpose of and only to the extent
necessary in making an audit of the Bureau.

2.5   A Federal return or Federal return information may be
disclosed in a judicial or administrative proceeding pertaining
to Possession tax administration, but only if the criteria
established in section 6103(h)(4)(A), (B) or (C) of the Code are
met.

2.6   Notwithstanding any other provision of this section,
the IRS will not disclose a Federal return or Federal return
information under this section if such disclosure would identify
a confidential informant or seriously impair a Federal civil or
criminal tax investigation.  The Bureau agrees that neither it
nor its legal representatives will make any further use or
disclosure of a Federal return or Federal return information
disclosed to a Bureau Representative by the IRS if the IRS
notifies the head of the Bureau in writing that such further use
or disclosure would identify a confidential informant or
seriously impair a Federal civil or criminal tax investigation.
The Bureau further agrees that prior to the disclosure of any
Federal return or Federal return information in a Possession

- 7 -

judicial proceeding or to any party other than the taxpayer or his/her designee in a Possession administrative proceeding if the return or return information satisfies one or more of the criteria established in section 6103(h)(4)(A), (B) or (C) of the Code, the head or legal representative of the Bureau will notify in writing the Service Center Director or Assistant Commissioner (International), from whom the return or return information was received, of the intention to make such disclosure. No officer, employee or legal representative shall disclose a Federal return or Federal return information in a Possession judicial or administrative proceeding if the Service Center Director or Assistant Commissioner (International) or their delegate, within 30 days following receipt of such written notice, informs the head or legal representative of the Bureau that such disclosure would identify a confidential informant or seriously impair a Federal civil or criminal tax investigation.

2.7   Additionally, the Bureau agrees that it will notify the Assistant Commissioner (International) when, during an audit of the Bureau by the Possession Audit Agency, Federal returns and Federal return information are disclosed to the Possession Audit Agency and such information is made part of the Possession Audit Agency's workpapers.

- 8 -

SECTION 3.   Disclosure of Possession Returns and Possession
Return Information

3.1   This Agreement and Appendix constitute the requisite
authorization for the Bureau to disclose to, and permit
inspection by, IRS Representatives of Possession returns and
Possession return information for the purpose of, and only to the
extent necessary in the administration of the internal revenue
laws, or related statutes, of the United States.   Any Possession
returns and Possession return information so disclosed to, or
inspected by, an IRS Representative become, in the hands of the
IRS, "taxpayer return information" as defined by section
6103(b)(3) of the Code and may be redisclosed by the IRS only in
accordance with provisions of the Code or an applicable treaty.


SECTION 4.   Safeguards and Other Requirements

4.1   As an express condition for the inspection and
disclosure of Federal returns and Federal return information, the
Bureau agrees to comply with the safeguards and requirements
prescribed by section 6103(p)(4)) of the Code and any
implementation of such safeguards and requirements as may be
provided by regulations and published procedures including:

    (a)   furnishing an annual report to the IRS describing the
          procedures established and utilized by the Bureau for
          ensuring the confidentiality of such returns and return
          information;

    (b)   permitting the IRS to review the extent to which the
Bureau is complying with the requirements of this
paragraph; and

    (c)   informing in writing all Bureau Representatives and
other persons to or by whom disclosure or inspection of
Federal returns or Federal return information is
authorized of the criminal penalties and civil
liability provided by sections 7213 and 7431 of the
Code for a disclosure of such returns and return
information which is unauthorized by the Code.

4.2   As an express condition for the inspection and
disclosure of Possession returns and Possession return
information, the IRS agrees to comply with the safeguards and
requirements prescribed by section 6103(p)(4) of the Code and any
implementation of such safeguards and requirements as may be
provided by regulations and published procedures.

4.3   Processing of Federal returns and Federal return
information received by the Bureau from the IRS in the form of
microfilms, photo-impressions, magnetic media or other format
(including reformatting or reproduction, or conversion to
magnetic media, punch cards, or hard copy printout) and
transmission and storage of such Federal returns or Federal
return information by or on behalf of the Bureau may be performed
by Bureau owned and/or operated computer facilities, facilities
shared by the Bureau with other Possession agencies, or by any
other person described in section 6103(n) of the Code.   In those

cases where such facilities used by the Bureau are shared with
other Possession agencies or operated by any other person
described in section 6103(n) of the Code, the Bureau will insure
the confidentiality of the Federal returns and Federal return
information provided to such shared facility or person.  As part
of this responsibility, the terms of any contract or agreement
between the Bureau and a shared computer facility or other person
to whom Federal returns or Federal return information is or may
be disclosed for a purpose described in this subsection, will
provide, or will be amended to provide, that such person, and
officers and employees of the person, will comply with the
applicable safeguard conditions contained in regulations,
published rules and procedures, or written communications.

   4.4  Because some taxpayers may be unaware that Bureau tax
officials are authorized under Federal law to obtain Federal
returns and Federal return information for Possession tax
administration purposes, the Bureau will publicize, in a manner
satisfactory to the IRS, that such returns or return information
were obtained pursuant to specific authority granted by the Code.
Similar publicity will be provided by the IRS for Possession tax
information furnished to the IRS pursuant to Possession law.

- 11 -

## SECTION 5.  Limitations

5.1  Pursuant to the provisions of section 6103(p)(2) of the Code, and of Possession law, if any, charges for furnishing returns and return information shall be governed by Article 5, paragraph 3 of the Agreement.

5.2  Under no circumstances will the Bureau permit any Federal return or Federal return information to be inspected by, or disclosed to an individual who is the chief executive officer of the Possession or any person other than one described in section 2 of this Appendix.

5.3  Notwithstanding any other provision of this Appendix, the IRS will not disclose or make known in any manner whatever to any person other than one described in Section 2 of this Appendix--

    (a)  any original, copy, or abstract of any return, payment, or registration made pursuant to chapter 35 of the Code (relating to taxes on wagering);

    (b)  any record required for making any such return, payment, or registration made or required pursuant to chapter 35 which the IRS is permitted by the taxpayer to examine or which is produced pursuant to section 7602 of the Code (relating to the examination of books and witnesses); or

    (c)  any information obtained by the exploitation of any such return, payment, registration, or record made or required pursuant to chapter 35.

- 12 -

5.4   Notwithstanding any other provision of this Agreement or Appendix, the Internal Revenue Service will disclose or make known in any manner to any person described in section 2 of this Appendix taxpayer information which was obtained pursuant to a tax convention or exchange of information agreement between the United States and a foreign government only if such disclosure is authorized by both the relevant convention or agreement and the Code.

SECTION 6.   Officials to Contact for Obtaining Information

6.1   Requests by the Bureau for Federal returns and Federal return information should be made to the officials named below:

    (a)   Requests by the Bureau for Federal return information in magnetic media should be made to the Assistant Commissioner (International), who will be responsible for coordinating the requests with the IRS National Office;

    (b)   Requests for physical inspection or copying of Federal returns, or requests for audit abstracts and reports pertaining to such returns, showing addresses within the possession should be made to the Director, Internal Revenue Service Center, Philadelphia, PA, who will be responsible for making the proper arrangements for inspection or copying; and

(c)   Requests by the head of the Bureau for Federal returns of taxpayers or Federal return information relating to taxpayers showing addresses outside the possession should be made to the Assistant Commissioner (International).

6.2  Requests by authorized officers and employees of the IRS for inspection or copying of possession returns and possession return information should be made to the Director, Virgin Islands Bureau of Internal Revenue.